UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYRONE JENKINS, | : | CIVIL ACTION NO. |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CHOICE GROUP LLC d/b/a CHOICE | : | |
| MOTOR CAR | : | |
|     Defendant | : | AUGUST 10, 2017 |

## COMPLAINT

### I.   INTRODUCTION

1. This is a suit brought by a consumer residing in Connecticut regarding the purchase and sale of a motor vehicle. Plaintiff brings this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant, Choice Group LLC d/b/a Choice Motor Car ("Choice Motor"), for engaging in unfair trade practices, including a wrongful repossession of the vehicle.

2. Plaintiff alleges that Choice Motor's conduct violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"); the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110a *et seq.* ("CUTPA"); and the provisions of the Connecticut Retail Installment Sales Financing Act, Conn. Gen. Stat. §36a-770 *et seq.* ("RISFA").

### II.   PARTIES

3. Plaintiff, Tyrone Jenkins ("Jenkins"), is a consumer and natural person residing in East Hartford, Connecticut.

4. Defendant, Choice Motor, is a Connecticut limited liability company that operates an automobile dealership in Plainville, Connecticut.

### III. JURISDICTION

5. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This court has jurisdiction over Choice Motor because it is a Connecticut company that regularly conducts business in this state.

7. Venue in this court is proper, because the Plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

### IV. FACTUAL ALLEGATIONS

8. On or about March 6, 2017, Jenkins purchased a 2007 Mercedes Benz C280 (the "Vehicle") from Choice Motor for a cash price of $5,995 plus additional charges for taxes, fees, and other products.

9. At the time of the sale, Choice Motor had advertised the Vehicle on-line for a cash price of $5,450.

10. Plaintiff paid a down payment of $1,000, and financed a balance of approximately $7,000 pursuant to a retail installment sales contract (the "First Contract").

11. The First Contract provided for weekly payments of approximately $97.00.

12. The First Contract referenced an assignment to Sensible Auto Lending.

13. Plaintiff was not provided with a copy of the Purchase Order, Retail Installment Contract or other purchase paperwork relating to the First Contract.

14. Although Choice Motor intended to assign the First Contract to Sensible Auto Lending at the time that it prepared the First Contract and provided it to Jenkins for execution, it was unable to do so or it declined to do so.

15. Choice Motor permitted Jenkins to take delivery of the Vehicle on or about March 8, 2017, and Jenkins obtained insurance on the Vehicle even though the Vehicle was not registered to Jenkins and even though Choice Motor was releasing the Vehicle on its dealer plates.

16. On or about March 18, 2017, Anthony from Choice Motor called Jenkins and told him that his purchase paperwork was lost and Anthony instructed Jenkins to return to Choice Motor to sign new paperwork.

17. Jenkins returned to Choice Motor on March 18, 2017 and met with Anthony.

18. Choice Motor provided Jenkins with a new Purchase Order that listed a cash price of approximately $7,000.

19. Choice Motor provided Jenkins with a new retail installment contract (the "Second Contract") that provided for an amount financed in excess of $10,000 and weekly payments of approximately $101.

20. Jenkins was upset that the Vehicle was still not registered in his name, and he requested a refund of his down payment from Choice Motor, but Anthony told him the down payment was non-refundable because Jenkins had been approved for financing.

21. Choice Motor allowed Plaintiff to take delivery of the Vehicle on March 18, 2017 on dealer plates, and Choice Motor provided Jenkins with a Temporary Loan agreement.

22. Choice Motor did not provide Jenkins with a copy of the Purchase Order, the Second Contract, or other purchase paperwork.

23. On or about April 13, 2017, Anthony of Choice Motor called Jenkins and asked him to return the Vehicle to Choice Motor so that it could bring the Vehicle through emissions testing.

24. Jenkins brought the Vehicle back to Choice Motor on April 13, 2017, and Anthony told Jenkins that he needed to sign new purchase paperwork because it had waited too long to register the Vehicle in Jenkins's name and they had to start the purchase paperwork over.

25. Choice Motor provided Jenkins with a new retail installment contract (the "Third Contract") that provided for an amount financed in excess of approximately $11,000 and weekly payments of approximately $87.00.

26. After Jenkins signed the Third Contract, Choice Motor told Jenkins he could not take possession of the Vehicle because he owed back taxes.

27. Jenkins was not aware that he owed back taxes, and he asked Choice Motor to refund his down payment.

28. Choice Motor refused to refund Plaintiff's down payment and it told Jenkins that Choice Motor could not refund the down payment because Jenkins had been approved for financing.

29. Choice Motor did not provide Jenkins with a copy of the Purchase Order, Third Contract or other purchase paperwork.

30. Choice Motor drove Jenkins back to his residence.

31. At all times, Jenkins was ready, willing and able to make his payments under each contract.

32. On information and belief, Choice Motor retook possession of the Vehicle because it did not want to be bound by the contracts that it had entered into with Plaintiff due to its inability to assign the contracts to a third party lender.

33. Choice Motor has never returned the $1,000 down payment to Plaintiff.

34. Choice Motors has subsequently disposed of the Vehicle.

35. Choice Motor has not provided Plaintiff with any notices in connection with its retaking possession of the Vehicle.

## V. CAUSES OF ACTION

### A. TRUTH IN LENDING ACT

36. To the extent that the extension of credit to Plaintiff was conditional, Choice Motor violated TILA because it failed to provide Plaintiff with the disclosures in the three contracts in a form that he could keep.

37. Choice Motor further violated TILA because it understated the Annual Percentage Rate, in that the monthly payments presume the extension of credit as of the date of the contract.

38. Choice Motor further violated TILA because it failed to mark the conditional credit terms as estimates.

39. Choice Motor further violated TILA, because it increased the cost of the Vehicle by $545 over the advertised price in order to offset a discount fee that was charged by Sensible Auto, and this additional cost would not have been imposed upon Plaintiff in a cash purchase of the Vehicle.

40. Choice Motors further violated TILA, because the increases in the price of the Vehicle in the Second Contract and the Third Contract were attributable to discount financing by Sensible.

41. Choice Motor is liable to Plaintiff for his actual damages pursuant to 15 U.S.C. § 1640(a)(1), plus statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3).

### B. RETAIL INSTALLMENT SALES FINANCING ACT – WRONGFUL REPOSSESSION

42. Choice Motor's conduct in inducing Jenkins to bring the Vehicle back to Choice Motor under false pretenses that it was going to bring the Vehicle through emissions testing and then its refusal to return the Vehicle to Plaintiff, constituted a repossession within the meaning of Conn. Gen. Stat. § 36a-785 of RISFA.

43. Choice Motor violated RISFA by repossessing the Vehicle when Jenkins was not in default.

44. Choice Motor repossessed the Vehicle without notice to Plaintiff.

45. Choice Motor failed to provide Plaintiff with written notice of the repossession under Conn. Gen. Stat. § 36a-785(c).

46. Choice Motor failed to provide Plaintiff with written notice of the disposition of the Vehicle under Conn. Gen. Stat. 36a-785(d).

47. Choice Motor failed to provide Plaintiff with an accounting of the disposition of the Vehicle under Conn. Gen. Stat. § 36a-785(e).

48. Choice Motor is liable to Plaintiff for the greater of his actual damages or twenty-five percent (25%) of the amount paid under the contract, pursuant to Conn. Gen. Stat. § 36a-785(i), or $250.

### C. ARTICLE 9 UNIFORM COMMERCIAL CODE – WRONGFUL REPOSSESSION

49. Choice Motor's conduct in inducing Jenkins to bring the Vehicle back to Choice Motor under false pretenses that it was going to bring the Vehicle through emissions testing and then its refusal to return the Vehicle to Plaintiff, constituted a repossession within the meaning of Article 9 of the Uniform Commercial Code.

50. Choice Motor violated Conn. Gen. Stat. § 42a-9-601 by repossessing the Vehicle when Plaintiff was not in default.

51. Choice Motor violated Conn. Gen. Stat. § 42a-9-613 and § 42a-9-614 by failing to provide Plaintiff with the notice of the disposition of the Vehicle.

52. Choice Motor is liable for statutory damages pursuant to Conn. Gen. Stat. § 42a-9-625.

### D. RETAIL INSTALLMENT SALES FINANCING ACT – RESCISSION

53. Choice Motor violated RISFA, Conn. Gen. Stat. § 36a-771(a) by failing to provide Plaintiff with a true and complete executed copy of each retail installment contract at the time Plaintiff signed the contracts.

54. Through its violations of TILA, as pled above, Choice Motor further violated RISFA, which incorporates the requirements of TILA by operation of Conn. Gen. Stat. § 36a-771(b).

55. The Vehicle was left in the possession of Choice Motor, and Choice Motor was therefore restored to its condition prior to the contracts, as nearly as possible.

56. Plaintiff is entitled to a rescission of the contract due to the violations of RISFA and a return of the $1,000 down payment paid for the Vehicle plus any amounts paid under the Third Contract.

### E. CONNECTICUT UNFAIR TRADE PRACTICES ACT

57. The actions of Choice Motor in representing to Plaintiff that he had been approved for financing on the purchase of the Vehicle, requiring him to enter into subsequent and more expensive contracts as a condition of retaining the Vehicle, and refusing to refund his deposit, and the repossession of the Vehicle constituted unfair and deceptive acts in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*.

58. Choice Motor further violated CUTPA by its violations of TILA, RISFA, and the UCC.

59. Choice Motor further violated CUTPA by its violation of Conn Agency Reg § 42-110b-28(b)(1) by selling the Vehicle for more than its advertised price.

60. Choice Motor further violated CUTPA, because the amounts charged in excess of the advertised price were finance charges, which caused the effective annual percentage rate to exceed the maximum of 19% permissible under Conn. Gen. Stat. § 36a-772.

61. Plaintiff has suffered ascertainable losses of money and property in that he lost his down payment of $1,000 and he lost the use of the Vehicle.

62. Choice Motor is liable to Plaintiff for his actual damages plus punitive damages and a reasonable attorney's fee and costs.

9

63.     Plaintiff seeks rescission of the contract as an equitable remedy under CUTPA.

**Wherefore, Plaintiff claims** actual damages, TILA statutory damages of $2,000; the greater of his actual damages or 25% of the amount paid under the contract; statutory damages under Conn. Gen. Stat. § 42a-9-625; a rescission of the contract; actual and punitive damages pursuant to CUTPA; attorney's fees and costs, and such other relief to which Plaintiff is entitled at law.

PLAINTIFF, TYRONE JENKINS

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn (ct02188)
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax. (860) 571-7457
    dblinn@consumerlawgroup.com